[Docket No. 51]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| IAN D. LEMONS,<br><br>             Plaintiff,<br><br>     v.<br><br>ATLANTIC CITY POLICE DEPT.,<br>DET. JOSEPH M. RAUCH, SGT.<br>JAMES HERBERTO,<br><br>             Defendants. | Civil No. 06-3440 (RMB)<br><br>**OPINION** |

APPEARANCES:

Ian D. Lemons, PRO SE
Prison #512297
SBI #987377B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Anthony A. Swan
City of Atlantic City
1301 Bacharach Boulevard
City Hall, Suite 406
Atlantic City, NJ 08401
     Attorney for Defendants

**BUMB**, United States District Judge:

**INTRODUCTION**

     This matter comes before the Court upon a renewed motion for summary judgment filed by the only remaining Defendants, two Atlantic City police officers - Detective Joseph M. Rauch and

1

Sergeant James Herberto. For the reasons discussed below, Defendants' motion is granted.

**FACTS AND PROCEDURAL HISTORY**

As the parties are familiar with the facts, the Court will recite them only briefly. On November 23, 2004, Plaintiff, Ian D. Lemons, was arrested in Atlantic City for robbing and assaulting an individual at gunpoint three months prior. He was subsequently tried by a jury and convicted of armed robbery and aggravated assault and sentenced to 20 years imprisonment for his crimes. He is now a prisoner at New Jersey State Prison.

On July 27, 2006, Plaintiff filed a federal civil complaint claiming that he was arrested without probable cause and without a proper arrest warrant in violation of his constitutional rights. Specifically, Plaintiff claims that Detective Rauch signed a criminal complaint without firsthand knowledge of the incident alleged and also failed to appear before a judicial officer to swear to the complaint. Plaintiff further alleges that Sergeant Herberto issued a defective and, thus, illegal arrest warrant which lead to Plaintiff's false arrest and false imprisonment from November 23, 2004 until June 29, 2005 (when Plaintiff was convicted).

Defendants filed a motion for summary judgment on June 10, 2008. [Dkt. No. 47]. Plaintiff did not file any opposition. On

August 6, 2008, the Court granted summary judgment as to Plaintiff's claim against the Atlantic City Police Department concerning inadequate supervision and training of police officers but denied summary judgment as to Plaintiff's claims against the individual officers, Detective Rauch and Sergeant Herberto. [See Dkt. No. 49]. However, as explained in the Opinion, the Court allotted Defendants two weeks to file a renewed motion for summary judgment as to the individual officers. Defendants filed such motion on August 20, 2008. [Dkt. No. 51]. Plaintiff filed an opposition[1] on September 23, 2008, three weeks late; however, as Plaintiff is pro se, the Court will still consider such opposition. Defendants filed a reply on October 9, 2009 [Dkt. No. 54] and Plaintiff filed what appears to be a sur-reply on October 24, 2009 [Dkt. No. 56]. Despite Plaintiff's failure to seek permission of the Court to file a sur-reply, again, in light of the fact that Plaintiff is pro se, the Court will still consider Plaintiff's submission.

**STANDARD OF REVIEW**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to

---

[1] Although Plaintiff titled this submission as "CIVIL RIGHTS COMPLAINT", Defendants and the Court have interpreted this as Plaintiff's opposition to Defendants' renewed summary judgment motion.

a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D. N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "when opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 Fed. Appx. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)); Fed. R. Civ. P. 56(e).  "At the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

**DISCUSSION**

Plaintiff alleges that Detective Rauch and Sergeant Herberto violated his constitutional rights under the Fourth Amendment by arresting him without a proper warrant.  In his opposition,

4

Plaintiff claims that the four arrest warrants issued were defective for six reasons: (1) the arrest warrants are fraudulent as Defendants "doctored-up" CDR1 forms, which are used for summons, to look like CDR2 forms, which are required for arrest warrants; (2) the oath for the complainant was improperly administered by Sergeant Herberto instead of a "Jurist"; (3) the warrants were illegally issued by Sergeant Herberto; (4) Detective Rauch inappropriately based his filing of the criminal complaint on hearsay; (5) Defendants failed to appear before a judicial officer to swear to the complaint; and (6) Defendants failed to establish probable cause for the arrest warrants. (Pl. Opp. at 3-6).

**1.  CDR Forms Used**

Plaintiff argues that Defendants improperly used CDR1 forms in obtaining the arrest warrants instead of the requisite CDR2 forms. In support of his allegation, Plaintiff states that "[t]he word warrant was type [sic] in next to the word Complaint on the top portion of this form, which is the Complaint." (Pl. Opp. at 3-4).

Plaintiff is correct that form CDR2 is the proper form for purposes of arrest warrants. Rule 3:2-3 of the New Jersey Rules of Court states that "[a]n arrest warrant shall be made on a Complaint-Warrant (CDR2) form." However, there is no proof that Defendants used CDR1 instead of CDR2 in this case. The fact that

the word "warrant" was typed in next to the word "complaint" is of no significance.[2] Deputy Court Administrator Yolanda Shabazz certified that "[e]ach of the four (4) Complaint-Warrants are on form CDR-2 as evidenced by the bail language below [her] signature. A form CDR-1 or Summons does not have the bail language." (Shabazz Cert. (Def. Reply Ex. A) at ¶5). She further certified that "[n]one of the Complaint-Warrants have been altered." (Id. at ¶6). Plaintiff's allegation of fraud is thereby refuted. The Court finds that Defendants properly used CRD2 forms in obtaining the arrest warrants at issue.

**2. Administration of Oath for Complainant**

Plaintiff contends that the jurat (i.e., the person administering the oath) "can only be signed by a Jurist, not a law-enforcement officer of any kind including prosecutors, as was criminally done in this case by Sgt. James Herberto..." (Pl. Opp. at 4). Contrary to Plaintiff's assertion, New Jersey law does permit police officers to administer oaths for complaints. Indeed, 2B:12-21 of the New Jersey Code, which remains good law despite Plaintiff's contention, provides that "a police officer in charge of a police station, other than an officer who participated in the arrest of the defendant, may exercise the

---

[2] The likely explanation for the difference in fonts is that the same basic complaint template is used for both complaint-summonses and complaint-warrants - the appropriate term (summons or warrant) is simply filled in at the time the complaint is filed. Nonetheless, this explanation has no bearing on the Court's decision.

6

power of the municipal court to administer oaths for complaints filed with the municipal court." N.J. Stat. Ann. 2B:12-21b.

In this case, the jurat was taken by Sergeant Herberto (Swan Certification (attached to Def. Renewed Motion), Ex. C), who was presumptively the one in charge of police headquarters at the time. In New Jersey, "when a complaint is prima facie in conformance with the statutory provisions and Court Rules, the burden must shift to the challenger to show it is not. There is no need for further fact-finding for the State to, in essence, prove the validity of what already appears to be valid." State v. Ambroselli, 356 N.J. Super. 377, 382-83 (App. Div. 2003). Accordingly, because Plaintiff has failed to introduce any evidence that Sergeant Herberto was not authorized to serve as the jurat for these warrants, the Court finds that there is no issue of material fact as to the administration of the oath.[3]

**3. Who Issued the Warrants**

Plaintiff also argues that "the Warrant is issued on the Jurat on the Complaint. Therefore, these fraudulent Warrants were Issued by SGT. James Herberto, in violation of both the 4th and 14th Amendments..." (Pl. Opp. at 4). The Court interprets Plaintiff's point to be that because Sergeant Herberto signed the

---

[3] In the event Plaintiff has bona fide evidence that Sergeant Herberto was not in charge of police headquarters at the time he signed as the jurat for these warrants, the Court will allow Plaintiff thirty days to move to reopen this case to present such evidence.

7

warrants as the jurat, he was the one who issued them.  Plaintiff fails to recognize that the warrants were actually issued by the Deputy Court Administrator, Yolanda Shabazz.  (Shabazz Cert. at ¶¶2-4).  Indeed, her signature appears on the warrants immediately below the words "DATE WARRANT ISSUED."  (Swan Cert., Ex. C).  Pursuant to New Jersey law, the Deputy Court Administrator is authorized to issue warrants.  N.J. Stat. Ann. 2B:12-21a.  Thus, the warrants were properly issued by the Deputy Court Administrator.  See Ambroselli, 356 N.J. Super. at 382.

### 4. Criminal Complaint Based on Hearsay

Plaintiff further claims that Detective Rauch did not have probable cause to file the criminal complaint because the information he relied on in doing so was hearsay.  Plaintiff's argument fails.  It is well established that "hearsay may be the basis for issuance of [an arrest] warrant 'so long as there is a substantial basis for crediting the hearsay.'"  United States v. Ventresca, 380 U.S. 102, 108 (1965) (quoting Jones v. United States, 362 U.S. 257, 269 (1960), overruled on other grounds); see also Draper v. United States, 358 U.S. 307 (1959); Brinegar v. United States, 338 U.S. 160 (1949).

In this case, the record shows that Detective Rauch relied on information from an anonymous caller, information from a "reliable confidential informant" as well as the positive identification made by the victim himself.  Specifically, as recorded in the police report of the incidents, on August 24,

8

2004, the Atlantic City Police Department "received an anonymous telephone call from an individual who reported that a male by the name of Ian Lemons, is in possession of a handgun and has been committing robberies in the Atlantic City area." (Swan Cert., Ex. B at 39). The caller also gave a description of Ian Lemons. (Id.). The report further states that the police had also "received information from a reliable confidential informant that Ian Lemons was involved in several other shooting incident [sic] in and around Atlantic City." (Id.). In addition, the report indicates that the victim of the robbery/assault "POSITIVELY identified the photograph of Ian Lemons as being the same person who shot him on the evening of Tuesday, August 17, 2004, and the same person [who] robbed him on the morning of Saturday, August 14, 2004." (Id. at 41).

Thus, Detective Rauch relied on information from three independent sources, all of which corroborated each other. The Court finds that this constitutes a "substantial basis for crediting the hearsay." Ventresca, 380 U.S. at 108 (internal quotation omitted).

**5. Appearance before Judicial Officer**

Plaintiff contends that Defendants failed to appear before a judicial officer when they obtained the arrest warrants. He admits that the warrants contain the signature of the Deputy Court Administrator, an authorized judicial officer, but claims that Defendants "doctored-up" the forms by photocopying the

warrant portion of CDR2 with the Deputy Court Administrator's signature and importing it into the CDR1 form. (Pl. Opp. at 5). This is pure conjecture on Plaintiff's part, as he has presented no evidence that shows Defendants altered the forms for the warrants. To the contrary, Deputy Court Administrator Yolanda Shabazz certified that the warrants are on form CDR2, that she signed each of the warrants after finding that probable cause existed, and that the warrants are "true and correct copies of the Complaint-Warrants [she] signed on August 27, 2004 pertaining to Mr. Ian Lemons." (Shabazz Cert. at ¶¶4-6). Given the evidence in the record, the Court finds that the Defendants did appear before a judicial officer as they were required to do.

### 6. Probable Cause

Finally, Plaintiff claims that Defendants failed to conduct a sufficient "fact-finding of probable cause" when they obtained the arrest warrants. He argues that "non [sic] of the defendents [sic] appeared before a Judicial Officer to swore [sic] this Complaint under Oath. Nor did they present Mr. lemons, before a Jurist to afford him the opportunity to confront the accuser in violation of his 5th & 6th Amendment U.S. Constitutional rights." (Pl. Opp. at 7).

First, as the Court has already found, Defendants did appear before a judicial officer when they obtained the arrest warrants. Second, Plaintiff is mistaken as to what the probable cause analysis requires for purposes of issuing an arrest warrant. The

law does not require that Plaintiff be afforded an opportunity to confront his accuser at the stage when an arrest warrant is issued. Rather, at that juncture, an arrest warrant may be issued if "a judge, clerk, deputy clerk, municipal court administrator or deputy municipal court administrator finds from the complaint ... that there is probable cause to believe that an offense was committed and that the defendant committed it..." N.J. Court Rule 3:3-1(a). Probable cause exists when the facts are such that a reasonably prudent person would believe that a crime had been committed. Gerstein v. Pugh, 420 U.S. 103, 111 (1975).

In this case, Defendants presented the information they had received from the anonymous caller, the confidential informant, and the victim to the Deputy Court Administrator Yolanda Shabazz. Based on this information, the Deputy Court Administrator found that there was probable cause that Plaintiff had committed the robbery and assault and, thus, she issued the warrants for Plaintiff's arrest. (Shabazz Cert. at ¶4 (stating that she signed the four warrants "after finding that probable cause existed to arrest Mr. Ian Lemons for the crimes listed")). As explained above, this Court finds that the information Defendants relied on in filing the criminal complaint did establish probable cause and, accordingly, the Deputy Court Administrator's decision to issue the warrants was proper. Consequently, Plaintiff's argument that Defendants lacked probable cause or failed to

conduct a proper probable cause analysis is without merit.

**CONCLUSION**

Based on the evidence in the record, the Court finds that Defendants have shown that probable cause existed and the arrest warrants were properly issued. Accordingly, there is no material issue of fact requiring trial and Defendants are entitled to summary judgment. An appropriate Order will issue this date.


Dated:  January 20, 2009       s/Renée Marie Bumb
                                                      RENÉE MARIE BUMB
                                                      UNITED STATES DISTRICT JUDGE